UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHERYL E.,

                                    Plaintiff,

v.                                                              5:20-CV-0867
                                                                (ML)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

OLINSKY LAW GROUP                               HOWARD OLINSKY, ESQ.
  *Counsel for Plaintiff*
250 S. Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.                 LISA G. SMOLLER, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**MIROSLAV LOVRIC**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Cheryl E. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for Social Security Disability Insurance ("SSDI").

(Dkt. No. 1.)  This case has proceeded in accordance with General Order 18 of this Court which

sets forth the procedures to be followed when appealing a denial of Social Security benefits.

Currently before the Court are Plaintiff's motion for judgment on the pleadings and Defendant's

motion for judgment on the pleadings. (Dkt. Nos. 15, 16).  For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted and the Commissioner's decision is affirmed.

## I.      PROCEDURAL HISTORY

On January 5, 2018, Plaintiff filed an application for SSDI, alleging that she became disabled on December 5, 2017, due to chronic neck and back pain stemming from a series of falls dating back to January 2016.  (Administrative Transcript ("T.") 147-153.)  Her application was denied initially on March 21, 2018.  (T. 59-79.)  Plaintiff requested a hearing, which was held on July 16, 2019, before Administrative Law Judge ("ALJ") David Romeo.  (T. 32-58.)  During the hearing, the ALJ heard testimony from Plaintiff and from vocational expert ("VE") Kenswa Harry.  (T. 36-56.)  The ALJ issued an unfavorable decision on July 29, 2019.  (T. 8-24.)  This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on June 1, 2020.  (T. 1-7.)

## II.      GENERALLY APPLICABLE LAW

### A.      Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

2

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

3

B.     **Standard for Benefits**[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments;  (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments;  (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the

---

[1]     The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and
Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited
interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir.
1983) (citation omitted).

claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.   <u>FACTS</u>

As of the date of the ALJ's decision, Plaintiff was 51 years old. (T. 36.)  She is a high school graduate who subsequently obtained an Associate's Degree.  (T. 583.)  Her prior employment includes positions as a day care provider, mental health therapy aide, retail cashier, and, most recently, health claims specialist for an insurance company.  (T. 186-193.)  She left this position due to her neck and back pain.

Plaintiff reported that she first injured her neck and back after a slip and fall in January 2016.  (T. 576, 970.)  She experienced subsequent falls that may have exacerbated the injury, in addition to documented degenerative changes to the cervical and lumbar spine.  (T. 261, 272, 812, 926.)  As a result of her physical impairments, Plaintiff experiences neck and back pain that radiates to her left shoulder and arm and is exacerbated by physical activity such as lifting and pulling.  (T. 576, 723.)  Plaintiff had anterior cervical discectomy and fusion surgery in 2018, and testified that she was still unable to lift her head all the way up or turn it fully to the right or left.  (T. 40-41, 45, 691-713.)  She also testified that, even after the surgery, she was unable to reach over her head, had difficulty sitting for longer than five minutes, and required assistance with daily activities such as doing laundry, washing dishes, and grocery shopping.  (T. 42-44, 45.)

The record includes Plaintiff's treatment history.  Rather than summarizing the records at the outset, the Court will refer to the pertinent records during its discussion of Plaintiff's arguments.

## IV.    THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff met the insured status requirements through December 31, 2022.  (T. 13.)  After finding that Plaintiff did not engage in substantial gainful activity ("SGA") after the alleged onset date of December 5, 2017, the ALJ found that Plaintiff had the following severe impairments: "left shoulder adhesive capsulitis, status post left rotator cuff and distal clavicle excision surgery; status post cervical fusion surgery; mild bilateral arthritic changes of the hips; lumbago with sciatica; mild left carpal tunnel syndrome; left cubital tunnel syndrome; migraine headaches; thrombocytosis; and obesity."  (T. 14-15.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment. (T. 15.)  At step four, the ALJ found that Plaintiff could perform less than the full range of sedentary work. (T. 15-19.)  Specifically, the ALJ found that Plaintiff could only occasionally balance, stoop, kneel, crouch, crawl, climb ramps, and climb stairs; should never climb ropes, ladders or scaffolds; could occasionally reach, handle, finger and feel with her non-dominant left upper extremity; could tolerate a moderate noise intensity level; and could tolerate occasional exposure to light brighter than that typically found in an indoor work environment such as an office or retail store.  (*Id.*)

In making the RFC determination, the ALJ stated that he considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R.

404.1529" and Social Security Ruling ("SSR") 16-3p.  (T. 16.)  The ALJ further stated that he

considered opinion evidence and prior administrative medical findings in accordance with 20

C.F.R. § 404.1520c.  (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding

pain, symptoms, and functional limitations raised during the hearing and in the overall

administrative record. (T. 16-17.)

At step four, the ALJ relied on the VE testimony to determine that Plaintiff was capable

of performing her past relevant work as a health claims specialist.  (T. 19-20.)  Accordingly, the

ALJ found that Plaintiff was not disabled from the alleged onset date through the date of his

decision.  (T. 20.)

## V.   <u>ISSUES IN CONTENTION</u>

Plaintiff raises the following arguments in support of her position that the ALJ's decision

is not supported by substantial evidence:

1.   The ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly assess the medical opinion evidence. (Dkt. No. 15 at 18-22.)

2.   The ALJ failed to properly consider Plaintiff's subjective testimony regarding pain. (Dkt. No. 15 at 22-24.)

Defendant contends that the ALJ's decision is supported by substantial evidence.  (Dkt.

No. 16 at 3-18.)  For the reasons set forth below, Defendant's motion for judgment on the

pleadings is granted and the Commissioner's decision is affirmed.

## VI. RFC AND MEDICAL OPINION EVIDENCE

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, 11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (D'Agostino, J.) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* 17-CV-00580, 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018) (Sannes, J.); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016) (Dancks, M.J.).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945; *see Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); *Kirah D. v. Berryhill*, 18-CV-0110, 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019) (Hummel, M.J.); *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)).  An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities.  *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016) (Dancks, M.J.); *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (Kahn, J.); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v.*

*Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Sec. of Health & Human Servs.*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, 17-CV-01266, 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (Dancks, M.J.) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and

---

[2]    Plaintiff's application was protectively filed on January 5, 2018. (T. 147-153).  Thus, the new regulations apply in this case.

(b)(1).  The two "most important factors for determining the persuasiveness of medical opinions

are consistency and supportability," which are the "same factors" that formed the foundation of

the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability

and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2).

With respect to "supportability," the new regulations provide that "[t]he more relevant the

objective medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s) or prior administrative medical finding(s), the more

persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at §§

404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency,"

"[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive

the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§

404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the

three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at

§§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical

opinions to be equally well supported and consistent with the record, but not exactly the same,

the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3)

through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3.    Evaluating Testimonial Evidence

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the

plaintiff's reports of pain and other symptoms into account.  *Genier*, 606 F.3d at 49.  The ALJ

must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, 18-CV-0326, 2019 WL 667743, at \*9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term.  SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.   The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier,* 606 F.3d at 49) (alterations in original).

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3)

precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any

medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any

measures taken by the claimant to relieve symptoms; and (7) any other factors concerning

claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3).

    **B.**    **Application**

        **1.**    **The ALJ's evaluation of the medical opinion evidence was supported by substantial evidence.**

In reaching his RFC determination, the ALJ considered a number of medical opinions

related to Plaintiff's physical and mental limitations.  (T. 18-19.)  With regard to Plaintiff's

physical abilities, Dr. Kalyani Ganesh performed a consultative examination of Plaintiff on

January 26, 2018.  (T. 576-581.)  During the examination, Plaintiff demonstrated a normal gait,

and was able to change for the examination, get on and off the examination table, and rise from a

chair without difficulty.  (T. 577.)  She had difficulty lying flat on the examination table, so the

examination was performed while Plaintiff remained seated.  (*Id*.)  Dr. Ganesh observed reduced

flexion and extension in the cervical and lumbar spine, and reduced range of motion in the left

shoulder.  (T. 578.)  Plaintiff exhibited full strength in both upper and lower extremities, with no

sensory deficits or muscle atrophy.  (*Id.*)  Based on that examination, Dr. Ganesh opined that

Plaintiff had no limitations with regard to sitting, standing, or walking, but had "moderate to

severe" limitations with regard to lifting, carrying, pushing, and pulling.  (T. 579.)  The ALJ

found Dr. Ganesh's opinion to be "a persuasive account of the claimant's functioning" in light of

its consistency with the consultative examination report as well as the overall medical record. (T.

18.)

The ALJ also considered the opinion of non-examining state agency consultant Dr. R.

Mohanty dated March 21, 2018, who reviewed Plaintiff's then-current medical records.  (T. 18,

69-71.)  Dr. Mohanty opined that Plaintiff could occasionally lift up to twenty pounds and could

frequently lift up to ten pounds.  (T. 69.)  Dr. Mohanty further opined that Plaintiff could stand

and/or walk for a total of six hours during an eight-hour workday and could sit for a total of six

hours in an eight workday.  (*Id.*)  The state agency consultant also opined that Plaintiff had no

limitations with regard to her ability to push or pull.  (*Id.*)  In Dr. Mohanty's opinion, Plaintiff

could occasionally climb ramps, stairs, ladders, ropes, or scaffolds, could occasionally balance,

stoop, kneel, crouch, and crawl, and was limited to occasional overhead reaching with her left

arm.  (T. 69-70.)  The ALJ found Dr. Mohanty's opinion to be persuasive in light of the state

agency consultant's expertise and its consistency with the overall record.  (T. 18.)  However, he

ranked it less persuasive than Dr. Ganesh's opinion because Dr. Mohanty had not examined

Plaintiff.  (T. 18.)

The ALJ also considered multiple opinions from Plaintiff's primary care physician, Dr.

Ifechukwude Ojugbeli.  (T. 19.)  On December 18, 2017, Dr. Ojugbeli opined that Plaintiff could

lift no more than five pounds, could stand, walk, or sit for no more than two hours at a time, and

could not crawl, stoop, crouch, kneel, balance, or bend.  (T. 412.)  He described Plaintiff as being

"very limited" in pushing and pulling, and having "difficulty" reaching.  (*Id.*)  He also opined

that Plaintiff's chronic pain affected her concentration.  (*Id.*)

On June 7, 2019, Dr. Ojugbeli opined that Plaintiff was incapable of even low stress jobs.

(T. 775.)  He opined that Plaintiff could only sit or stand for five minutes before having to

change positions and required a cane when walking or standing. (T. 775-776.)  He further opined

that Plaintiff could rarely lift less than ten pounds and could never lift any greater weight.  (T.

13

776.)  In his opinion, Plaintiff's neck impairment limited her to rarely looking down, turning her

head right or left, looking up, or holding her head in a static position.  (*Id.*)  He also opined that

Plaintiff could never crouch, squat, or climb ladders, and could rarely twist, stoop, or climb

stairs.  (*Id.*)  He further opined that Plaintiff could rarely use her hands to grasp, turn, or twist

objects, could rarely use her fingers for fine manipulation, and could rarely use her arms for

reaching, including overhead.  (T. 776-777.)  In his opinion, Plaintiff's pain would constantly

interfere with her ability to maintain necessary attention and concentration for simple work tasks.

(T. 777.)  Dr. Ojugbeli issued similar, but less detailed, opinions on July 26, 2018, August 7,

2018, and July 9, 2019, offering the general conclusion that that Plaintiff was incapable of any

form of work.  (T. 953-954, 1075.)

 Plaintiff contends that the ALJ failed to adequately explain inconsistencies between the

medical opinion evidence and the ultimate RFC determination, particularly with regard to

reaching, head movement, and use of the hands.  (Dkt. No. 15 at 20-21.)  She further contends

that the ALJ's reliance on the opinions from Dr. Ganesh and Dr. Mohanty is misplaced, because

the consultative examination occurred before Plaintiff's March 20, 2018, spinal surgery and her

December 13, 2018, arthroscopic left shoulder surgery.  (T. 754, 849, 852.)  Neither argument is

persuasive.

 As an initial matter, "there is no requirement that the ALJ pick one RFC [opinion] and

use that particular evaluation in its entirety."  *Alexandrea R.R. v. Berryhill*, 15-CV-0756, 2019

WL 2269854, at *6 (N.D.N.Y. May 28, 2019) (Hurd, J.).  Rather, "it is the ALJ's responsibility

to choose between properly submitted medical opinions and other competent evidence to piece

together an overall [RFC] assessment."  *Alexandrea*, 2019 WL 2269854 at *6.  It is well-settled

that it is not improper for an ALJ to adopt only a portion of a medical source's opinion; indeed,

"[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, he or [she] was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  Thus, based on the record as a whole, the court concludes that the ALJ's evaluation of the medical opinion evidence was supported by substantial evidence, even though he found greater restrictions with regard to reaching and hand manipulation than identified by Dr. Ganesh and Dr. Mohanty, and rejected Dr. Ojubeli's opinion that Plaintiff had extreme limitations in head movement and concentration.

As discussed above, the ALJ did not adopt all of the findings of Dr. Ganesh or Dr. Mohanty.  Plaintiff is correct that the manipulative and reaching limitations in the ALJ's RFC determination are more restrictive than those identified by Dr. Ganesh and Dr. Mohanty, but this, by itself, does not require remand.  "Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." *Catalfamo v. Berryhill*, 17-CV-0496, 2019 WL 1128838, at *2 (W.D.N.Y. March 12, 2019) (collecting cases) (internal quotation omitted); *Susan M. v. Comm'r of Soc. Sec.*, 18-CV-0623, 2019 WL 2754480, at *7 (N.D.N.Y. July 2, 2019) (Suddaby, C.J.) (any error in assessing medical opinion would nonetheless be harmless because the ALJ found that Plaintiff was more limited than the opinion).

Plaintiff's argument that the consultative opinions were rendered stale by subsequent surgeries is likewise unpersuasive.  The ALJ expressly considered Plaintiff's post-surgery records and found the opinions of Dr. Ganesh and Dr. Mohanty to be consistent with the overall medical record.  (T. 18.)  Plaintiff has not identified any significant deterioration in Plaintiff's condition that would render either opinion "stale," particularly after Plaintiff recovered from her

15

surgeries.  *Maxwell H. v. Comm'r of Soc. Sec.*, 19-CV-0148, 2020 WL 1187610, at \*5 (N.D.N.Y. March 12, 2020) (Kahn, J.) (A consultative opinion may become stale "if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision.") (quoting *Clute ex rel. McGuire v. Comm'r of Soc. Sec.*, 18-CV-0030, 2018 WL 6715361, at \*5 (W.D.N.Y. Dec. 21, 2018)).  Following her cervical spine surgery, Plaintiff reported that she was doing "well" during follow-up visits in March and June 2018, despite lingering pain in her left side.  (T. 691, 733, 1036.)  In March 2019, Plaintiff demonstrated good cervical range of motion, and reported that her neck was "doing well." (T. 1036.)  In addition to these examination reports, the ALJ also considered post-surgery imaging reports that consistently found Plaintiff's spinal fusion hardware to be stable, and the remaining degeneration in her cervical spine to be "mild to moderate."  (T. 17, 812, 834, 847.)  Plaintiff also demonstrated some improvement in her left shoulder range of motion as a result of post-surgery physical therapy.  (*Id.*)  A June 2019 physical examination showed improved range of motion in the left shoulder, despite lingering mild stiffness.  (T. 1058.)  Accordingly, the ALJ marshaled substantial evidence to find Dr. Ganesh and Dr. Mohanty's opinions to be "persuasive," despite Plaintiff's subsequent surgeries.

The ALJ applied a similar approach in rejecting the most extreme limitations opined by Plaintiff's primary care physician, Dr. Ojugbeli, by comparing them not only to the other medical opinion evidence, but also the longitudinal medical record.  (T. 19.)  The ALJ cited multiple examination reports, including those of Dr. Ojugbeli, finding normal range of motion in Plaintiff's neck once she had healed from surgery.  (T. 18-19, 366, 376, 417, 828-829, 1036, 1058.)  Despite Dr. Ojugbeli's opinion that Plaintiff required a cane to walk, the ALJ found that multiple examinations showed a normal gait and balance with no assistive devices despite

inconsistent physical therapy.  (T. 18-19, 658, 850, 960, 1026.)  The ALJ also found no support

for Dr. Ojugbeli's opinion that Plaintiff could not tolerate even low stress employment or

maintain the attention and concentration for simple tasks, whether from physical or mental

impairments.  (T. 19, 777.)  The court notes that Plaintiff's own reports that she spent a

significant amount of time reading and completing puzzles appear inconsistent with extreme

limitations with attention and concentration.  (T. 47.)

      Plaintiff suggests that the ALJ failed to adequately develop the record, in particular by

not re-contacting Dr. Ojugbeli to further explain his opinion.  (Dkt. No. 15 at 19-20.)  An ALJ

has an affirmative obligation to develop a claimant's complete and accurate medical record.

"[T]he Commissioner of Social Security . . . shall develop a complete medical history of at least

the preceding twelve months for any case in which a determination is made that the individual is

not under a disability."  42 U.S.C. § 423(d)(5)(B); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d

Cir. 1996) (citation omitted) (noting that a "hearing on disability benefits is a non-adversarial

proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the

administrative record").  An ALJ's failure to comply with this mandate is legal error.  *Rose v.*

*Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016).  However, the ALJ's duty to

develop the record is not unlimited and is discharged when the ALJ "possesses [the claimant's]

complete medical history" and there are no "obvious gaps or inconsistencies" in the record.

*Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted).

      In this case, the ALJ allowed Plaintiff an opportunity to supplement the medical record

and accepted a July 9, 2019, opinion from Dr. Ojugbeli that was provided on the day of the

hearing.  (T. 35, 1075.)  He also reviewed Plaintiff's medical record dating back to the January

2016, fall that first led to Plaintiff's treatment for back and neck injuries, and cited that record

extensively in his decision.  Therefore, there are no obvious gaps and inconsistencies in the

medical record, and the ALJ is not required to develop the record any further when the evidence

already presented is "adequate for [the ALJ] to make a determination as to disability." *Janes v.*

*Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (quoting *Perez*, 77 F.3d at 48).  Likewise, there is

nothing to suggest that the ALJ should have exercised his discretion to re-contact Dr. Ojugbeli.

*See* 20 C.F.R. §§ 404.1520b(b)(2)(i) (Commissioner may, but is not required to, re-contact a

claimant's treating source if the ALJ determines that the record evidence is insufficient or

otherwise cannot determine whether the claimant is disabled).

### 2.    The ALJ's evaluation of Plaintiff's testimony regarding pain was supported by substantial evidence.

At her hearing, Plaintiff testified that her neck and shoulder pain prevented her from

sitting for more than five minutes at one time, limited her to standing or walking for no more

than seven minutes at one time, and required her to continually alternate positions to relieve

some of the pain. (T. 41.)  She rated her pain as a constant eight or nine out of ten. (T. 42-43.)

Despite her surgery, Plaintiff testified that her neck impairment prevented her from looking

down and made it difficult to turn her head to the left or right.  (T. 45.)

The ALJ found Plaintiff's description of her pain and other symptoms to be "not entirely

consistent" with the other evidence in the record.  (T. 16.)  In reaching this conclusion, the ALJ

cited some of the examination results discussed above, that showed an improvement in Plaintiff's

range of motion, strength, and overall functioning following surgery.  (T. 17, 366, 376, 417, 828-

829, 1036, 1058.)  Plaintiff contends that the ALJ overemphasized these objective results, but the

ALJ's evaluation of Plaintiff's symptoms went beyond the bare clinical records.  For example,

the ALJ considered multiple notes from treatment providers in 2017 and 2018 (prior to Plaintiff's

18

surgeries) that Plaintiff's description of debilitating pain was inconsistent with imaging results and a nerve conduction study.  (T. 17, 645, 672, 680.)  The ALJ also considered Plaintiff's own multiple post-surgery comments that she was doing well and feeling reduced pain.  (T. 17, 691, 700, 733, 816, 1036.)

As with her challenge regarding the medical opinion evidence, Plaintiff identifies discrete portions of the treatment record that can be read as bolstering her testimony regarding her pain and the resulting functional limitations.  (Dkt. No. 15 at 21-23.)  However, as outlined above, the ALJ considered such evidence in his decision, along with the broader medical record, opinion evidence, and Plaintiff's testimony before he reached a less restrictive but substantially supported conclusion.  (T. 15-20.)  Therefore, Plaintiff's disagreement with the factual determination that the ALJ drew from this record evidence is not a basis for remand.  "The substantial evidence standard means that once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original).  In other words, a claimant must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record."  *Z.J.F. ex rel. Conkling v. Comm'r of Soc. Sec.*, 16-CV-1397, 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) (Carter, M.J.).  Plaintiff has not done so.

## VII.   <u>PRIOR WORK</u>

To answer the step four inquiry, an ALJ may engage a vocational expert to opine on the jobs that a hypothetical person of the claimant's age, education, and RFC could perform in the national economy.  20 C.F.R. § 404.1560(b)(2) ("a vocational expert . . . may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the

demands of the claimant's previous work"); *accord Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir.

1986) ("If nonexertional limitations significantly diminish [claimant]'s ability to perform the full

range of 'light work,' then the ALJ should require the Secretary to present either the testimony of

a vocational expert or other similar evidence regarding the existence of jobs in the national

economy for an individual with claimant's limitations.").  Here, the ALJ properly inquired of a

vocational expert given that Plaintiff's RFC contained multiple non-exertional limitations that

limited the potential range of sedentary occupations.  The VE testified that someone of claimant's

age, education, and RFC could still perform Plaintiff's past work as a health claims specialist.

(T. 55-56.)  Because the RFC determination was supported by substantial evidence, the ALJ's

hypothetical was proper.  *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ

may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is

substantial record evidence to support the assumption[s] upon which the vocational expert based

his opinion' . . . .") (citation omitted).  Thus, the ALJ could properly conclude that Plaintiff could

return to her past work and that therefore she was not disabled.

     **ACCORDINGLY**, it is

     **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is

**DENIED**; and it is further

     **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is

**GRANTED**; and it is further

     **ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated: December  15 , 2021
         Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge